UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>            Plaintiff     )<br>                          )   Cr.# 04-10314-RCL<br>    v.                    )<br>                          )<br>RICHARD PENA,             )<br>                          )<br>            Defendant     )<br>_____    ) | |

**SENTENCING MEMORANDUM OF DEFENDANT PURSUANT
TO F.R.Cr.P. RULE 32(a)(C) and 18 U.S.C. § 3553(a)**

*It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.*

United States v. Koon, 518 U.S. 81, 113 (1996)


This memorandum is being submitted to assist this Honorable Court in its determination of the most appropriate sentence for Mr. PENA by addressing each of the available sentencing options under the provisions of 18 U.S.C. § 3553 (a) as now constitutionally required by the Supreme Court.  As set forth below Mr. Pena respectfully submits that the sentence recommended in the plea agreement is the most appropriate sentence for Mr. PENA.

First of all Defendant is shocked and dismayed by Probation's unilateral rejection of Mr. PENA's objections, objections that focused on the very facts that gave rise to the

1

plea agreement. The most troubling issue is Probation's position refusing to grant a Safety Valve adjustment in the recommended Guideline Sentence because "the Government advises that there is no record of the defendant ever making a Safety Valve proffer," PSR p. 70. Contrary thereto is the express language of the plea agreement (entered into after Mr. Pena's proffer on November 2, 2006) that the "Government agrees, based on information known as of the date of the agreement, that Defendant has satisfied U.S.S.G. § 5C1.2(a)(5)." (Agreement paragraph 3(f). Probation was provided with the names of all persons present and such was easily verifiable.

Probation has also formulated its Pre-Sentence Report and Guideline ranges based on purported "facts" that were submitted by the government.[1] Many of those "facts," were often based on an agents "belief," and "interpretations" of telephone calls.[2] Mr. PENA objected to and disagrees with Probation's findings that have blanketly adopted the government's version of the offense.

The most important of those purported "facts" is the amount of contraband for which Mr. PENA should be held responsible and his presence or non presence at an event that gives rise to increasing the amount. Of note is that the

---

[1] The Government has taken a position as to the amount of contraband involved that is contrary to that stated in the agreement (Probation's response to objection #2.) See United States v. Matos-Quinones 456 F.3d 14, 24 (1st. Cir. 2006) wherein the First Circuit made clear that "we hold prosecutors engaging in plea bargaining to the most meticulous standards of both promise and performance..... A defendant is entitled not only to the government's 'technical compliance" with its stipulations but also to the 'benefits of the bargain struck in the plea deal" (*citations omitted).*

[2] Probation and the government are simply wrong in the statement that a telephone call on July 10, 2004 refers to 80 kilos. There is no such understandable reference in that call, # 234.

Government has also entered into a plea agreement with Mr. Pinales, the leader of the organization, that holds him responsible for a Guideline range of 50-150 kilos.  Mr. PENA, in his objections to the PSR, submitted a detailed analysis of the relevant telephone calls that suggest that he was NOT present during an event when an unknown additional amount of cocaine was delivered. [3]  Strangely, the government provides Probation and, by so doing, apparently advocates for an amount of contraband for which Mr. PENA should be held responsible which is contrary to its express stipulation in the agreement. (Agreement paragraph 3(c)... 50-150 kilos).[4]

As stated by Judge Young in <u>Berthoff v. United States</u>, Dkt. 97-10883-WGY,  plea "bargaining is an inescapable concomitant of any criminal justice system that encourages pleas, it is thought acceptable because we expect the Executive to enforce the laws, and thus to determine who to charge, with

---

[3] Probation indicates that it "takes offense to defense counsel's suggestion that [it] ignored" the objections to the offense conduct submitted immediately after the submission. <u>See</u> Addendum page 67, Response to Objection #2 . Plainly and simply, Probation adopted the government's version of offense verbatim despite the fact that the relevant telephone call(s) and the observations surrounding them does NOT contain the information suggested. Probation acknowledges that it has requested but not received "confirmation of the DEA agent's observation," PSR p. 67,  but has adopted a position that accepts the government's position WITHOUT SUCH CONFIRMATION.  It is defense counsel who is offended by Probation's lack of independence and unprofessional insult when it implies that defense counsel inaccurately informed them that a safety valve proffer had taken place "[b]ased on information from the Government" . PSR p. 70. (Probation was told that defense counsel and former AUSA Maureen Hogan were present at such proffer). The existence of the proffer was easily verifiable but Probation failed to do so and instead relied on the new AUSA's mistaken belief that no proffer had occurred. Defendant has now been informed by the government that it concedes that there was a "misunderstanding" and Probation will be so notified.

[4] The government has  informed counsel that it will abide by the agreement and not present any evidence contrary thereto.  The government indicated that it simply was providing all information of which it was aware but will not be presenting evidence to support Probation's conclusions in response to Mr. PENA's objections.

3

what, and when to drop, dismiss, or nol pros a pending charge."
While the Court must be informed of all relevant facts known to
the parties " [a]ll plea negotiations, of course, necessarily
involve an assessment of the strengths or weaknesses of a case,
the credibility of witnesses, their vulnerability to
impeachment, their basic presentability, and a host of related
details." Id. fn 19.  The plea agreement entered into herein
did exactly that and provided the Court with a proposed
sentencing range that was reflective of both who Mr. PENA was
and his relative role in the conspiracy.

    Mr. PENA was no more than an uneducated "gopher" who made
deliveries for Mr. Pinales and Mr. Rodriguez. He had no control
over the quantity of drugs or to who they were to be delivered.
He did not have any independent thoughts or actions and
throughout the conspiracy he acted at the behest of others.
His sole role was to deliver cocaine or pick up money, as
authorized and directed, by Pinales and others.  As the
evidence makes clear, due to his limited education, Mr. PENA
had no independent authority whatsoever and did NOT
"participate in "securing the drugs" or "discussing drugs with
co-conspirators, suppliers and purchasers" any more than what
would be performed by any courier. (See PO response to
objection #7).  As evidenced by the plea agreement recommending
a role reduction, Mr. PENA was told what to do and when to do
it, and was not fully trusted by others, most probably due to
PENA's lack of acuity.  As a courier, a decrease offense level
is appropriate when a defendant is less culpable of those
involved in the criminal activity. See e.g. U.S.S.G. § 3B1.2,

4

former Application Note 2, (explaining applicability of role reduction for those whose role was limited to "transporting or storing") and Amendment 640 (U.S.S.G. § 2D1.1(a)(3)(*maximum base level of 30*), Reason for Amendment explaining the "lower degree of culpability" for "mules" and "couriers."

While 18. U.S.C. § 3553(a)(4) requires the Court to consider the Guideline ranges, "it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." *Booker,* Breyer, J. 125 S.Ct. at 757. Relative culpability of the parties involved and disparity with similarly situated defendants is one such consideration, 18 U.S.C. § 3553(a)(6).

One may ask: "what is a sentence that is "sufficient, but not greater than necessary" as required by § 3553(a)? Justice Kennedy, in his 2003 speech to the American Bar Association openly commented on the unfair severity of federal sentences and the harmful effects that the rigid application of the Sentencing Guidelines had on individuals and society as well as the Guidelines readily apparent failure:

"Our resources are misspent, our punishments too severe, our sentences too long....In the federal system the sentencing guidelines are responsible in part for the increase in prison terms....The Federal Sentencing Guidelines should be revised downward..."

In the instant case, Mr. PENA stands before this Honorable Court ready to be sentenced for his limited participation in a large, well organized, conspiracy involving the distribution of cocaine. Ms. PENA is an illiterate 58 year old native of the

5

Dominican Republic with no prior history of any criminal involvement.  He has eight children and worked hard throughout his life to support them. PSR ¶s 213-226.  He currently is in very ill health, PSR ¶s 227-231 which counsel has confirmed with the Plymouth County House of Correction medical staff. (He is being treated by the chronic disease staff because of his severe hypertension and issues with his prostate for which a biopsy has been recommended). Growing up, Mr. PENA was extremely poor and uneducated as he had to drop out of school to work in the farms and sell peanuts since the age of 10. PSR ¶s 196-197.  As a result of this conviction he faces mandatory deportation back to the Dominican Republic.  As a deportable alien, Mr. Pena's security classification is higher and he does not qualify to participate in numerous BOP programs.

Guideline Calculations

Mr. PENA disagrees with Probation and respectfully asks that the Court follow the calculations suggested in the Plea Agreement.  Mr. PENA requests that he be held responsible for a total of 50-150 kilograms but that his Guideline level is capped at **30** pursuant to U.S.S.G. § 2D1.1(a)(3), Plea Agreement ¶ 3.  After role reductions, "safety valve" reductions and adjustments for minor role, Mr. PENA submits that his Guideline level should be found to be **23**.  There is no mandatory minimum because of his compliance with the "safety valve."  The sentencing range is **46-57** months.  See also, P.S.R. Addendum, P.O. Response, No. 8.

6

**RECOMMENDED SENTENCE**

Mr. PENA, has now spent approximately **two and a half years actual time** in custody pending these proceedings (since October 12, 2004). Given his certainty of deportation and the strong likelihood of further incarceration of several months (detention) pending deportation, a sentence of **46 months** with three years of supervised release (while he is in the United States), would be a sentence that is sufficient but no more than necessary to carry out the provisions of 18 U.S.C. § 3553(a). Such a sentence would avoid disparity, reflect the seriousness of the offense and provide Mr. PENA with needed treatment and rehabilitation. It is also a "reasonable sentence" that fully complies with the all the factors set forth in § 3553(a)(2) and well within the discretion of this Honorable Court. Mr. PENA would further request that this Honorable Court recommend that to the BOP that he be placed in a medical facility so that he may receive needed treatment.

Date: June 19, 2007       Respectfully submitted,

                          RICHARD PENA,
                          By his attorney,

                          *s/ Victoria M. Bonilla*

                          Victoria M. Bonilla (BBO #558750)
                          Bourbeau and Bonilla, LLP
                          77 Central St, 2nd Floor
                          Boston, MA 02109
                          (617) 350-6868

///

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.

*s/ Victoria M. Bonilla*